UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOANNA BELANGER,

    Plaintiff,

v.     Case No.:  2:21-cv-924-KCD

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## ORDER

Plaintiff Joanna Belanger sues under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner of Social Security's decision denying her application for disability insurance benefits. (Doc. 1.)[1] For the reasons below, the Commissioner's decision is affirmed.

### I. Background

The procedural history, administrative record, and law are summarized in the parties' briefs (Doc. 25, Doc. 28) and are not fully repeated here. Belanger filed for disability benefits claiming she could not work because of spinal fusion, spinal stenosis, arthritis, fibromyalgia, anemia, headaches, and

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

memory loss. (Tr. 71.) After her application was denied, Belanger sought review by an administrative law judge. (Tr. 15.)

Following a hearing, the ALJ agreed that Belanger was not disabled. (Tr. 25.) To make this determination, the ALJ used the multi-step evaluation process established by the Commissioner. *See* 20 C.F.R. § 404.1520(a).[2] The ALJ found that although several of Belanger's impairments qualified as severe, she retained the residual functional capacity ("RFC") to perform some work with restrictions:

> [She can] lift twenty pounds occasionally and ten pounds frequently; she can stand/walk for six hours per day and sit for six hours per day; she can never climb ladders, ropes or scaffolds; she can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl; she can frequently balance, reach, handle, finger and feel; and she must avoid vibration, hazardous machinery and heights.

(Tr. 17, 20.) After considering the RFC and other evidence, including vocational expert testimony, the ALJ ultimately concluded that Belanger could perform

---

[2] An individual claiming Social Security disability benefits must prove that she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

her past relevant work as a city manager and administrative assistant. (Tr. 23.) The ALJ also found Belanger would be capable of successfully transitioning to other jobs that exist in significant numbers in the national economy. (Tr. 24.) Thus, Belanger was not disabled as that term is defined in this context. (Tr. 25.)

Belanger further exhausted her administrative remedies, and this lawsuit timely followed. (Doc. 1.)

## II. Standard of Review

Review of the Commissioner's (and, by extension, the ALJ's) decision denying benefits is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a mere scintilla but less than a preponderance. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The Supreme Court recently explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

When determining whether the decision is supported by substantial evidence, the court must view the record as a whole, considering evidence

favorable and unfavorable to the Commissioner. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. And even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Finally, "[u]nder a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports [her] position; [she] must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017).

### III. Analysis

Belanger presses three arguments on appeal. First, she claims the ALJ did not properly consider the medical opinion given by her primary care physician, Dr. Humbarger. (Doc. 25 at 12.) Second, she says substantial evidence does not support the ALJ's RFC assessment. (*Id.* at 17.) And finally, according to Belanger, the ALJ wrongly rejected her subjective complaints as not credible. (*Id.* at 21.) These issues are addressed in turn.

#### A. Dr. Humbarger

Dr. Humbarger found Belanger has very limited functioning. For example, he stated she has constant pain, can work in a sitting or standing position for less than an hour, can sometimes lift or carry five pounds but never

4

over ten pounds, must rest for at least fifteen minutes every hour, and will miss more than three days of work per month because of her health problems. (Tr. 745-50.) But when asked to provide clinical and laboratory support for his diagnoses, he gave none. (Tr. 745.)

When dealing with a medical opinion, the ALJ must consider its persuasiveness using several factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, which includes (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization; and (5) other factors." 20 C.F.R. § 404.1520c(a) & (c)(1)-(5). Supportability and consistency "are the most important factors" in determining persuasiveness. *Id.* § 404.1520c(b)(2). And because of their importance, the ALJ must explain "how [he] considered the supportability and consistency factors for a medical source's medical opinions." *Id.*

Put simply, the ALJ must assess the factors of supportability and consistency for each medical opinion. "Supportability" refers to how well a medical opinion is bolstered by objective medical evidence and explanations provided by the medical source giving the opinion. "Consistency" is a measure of how the medical opinion aligns with evidence from other sources (medical and nonmedical). *Id.* § 404.1520c(c).

Here, the ALJ explained how he evaluated these factors:

5

> The undersigned has considered the opinion of Dr. Humbarger, M.D. (See Exhibit 15F). The opinion, however, is not persuasive as it is contradicted by the doctor's own treatment notes, which do not show such extreme limitations. (See Exhibits 6F and 16F). The opinion is little more than a checklist and contains little analysis or explanation. Moreover, it is inconsistent with the overall medical record and the opinions of the state's medical experts.

(Tr. 22.) Substantial evidence underlies the ALJ's supportability assessment. This is most evident in the lack of supporting documentation in the medical opinion itself, as noted above. But even setting aside the perfunctory nature of Dr. Humbarger's opinions, his treatment history only further undermines Belanger's position. For example, Dr. Humbarger's treatment notes offer almost no support for Belanger's functional limitations. And Belanger regularly reported to Dr. Humbarger that she "feels confident managing chronic conditions." (Tr. 751-73.) Finally, Belanger offers nothing to back up her claim that Dr. Humbarger's opinion was indeed supported.[3] Thus, there is no error in the ALJ's supportability determination.

Substantial evidence favors the ALJ's consistency finding too. For example, the ALJ noted that other evidence in the record showed Belanger to

---

[3] Belanger does claim Dr. Humbarger's opinion meets the regulations' requirement of supportability and consistency (Doc. 25 at 16), but she continually conflates these two concepts. As explained, they are not the same, and Belanger does nothing to show how "objective medical evidence and supporting explanations presented by" Dr. Humbarger do, in fact, support his opinion.

have a normal gait (Tr. 21, 350, 354, 729), no assistive devices (Tr. 21, 741), full or nearly full strength in her extremities (Tr. 21, 729), and medication that provides adequate pain relief (Tr. 21, 704). The state medical consultant, Dr. Thomas Bixler[4] found Belanger could often lift ten pounds (Tr. 66), could work in a sitting or standing position for about six hours with normal breaks (Tr. 66), and had no postural or manipulative limitations (Tr. 66). On reconsideration, state medical consultant Dr. Robert Nuss found the same but with minor postural limitations. (Tr. 80-81.) Both medical consultants said Belanger could perform light work, which included her previous work as she actually performed it. (Tr. 67-68, 82-83.) Thus, substantial evidence exists to find these opinions conflict with Dr. Humbarger's.

At this point, because the ALJ addressed the required factors and cited to substantial evidence to support his assessment, it is Belanger's burden to prove why substantial evidence does not exist. *See Sims*, 706 F. App'x at 604. To meet this burden, Belanger argues that Dr. Humbarger's opinion aligns with medical evidence from PA Brett Griffin. And given this consistency, the ALJ should have discussed Griffin's opinions instead of ignoring them. (Doc. 25 at 13.) But despite the evidence she cites, there are elements of inconsistency too. Griffin noted that Belanger is "able to move all extremities

---

[4] Belanger incorrectly refers to this individual as "Dr. Bexley." (Doc. 25 at 16-17.)

7

well with the exception of moderate back pain when getting up from a seated position." (Tr. 776.) Griffin also said her left upper arm pain "can occasionally be quite debilitating" (Tr. 777), which contradicts Dr. Humbarger's assessment of "constant pain" (Tr. 749.) Finally, Griffin found Belanger has full strength in her upper and lower extremities and was "hopeful that her axial neck pain can [be] treated conservatively." Thus, Griffin's medical evidence is at least inconsistent in part. But even more problematic on a fundamental level, Griffin's evidence is not a medical opinion and therefore the ALJ did not need to discuss it to the extent Belanger argues. *See* 20 C.F.R. § 404.1513 (a)(2); *Dye v. Comm'r of Soc. Sec.*, No. 5:20-CV-459-NPM, 2022 WL 970186, at *4 (M.D. Fla. Mar. 31, 2022) (noting the ALJ must consider medical evidence that does not rise to the level of a medical opinion but need not articulate his thoughts on it).

Belanger also argues the ALJ should have discussed other evidence, such as CT scans, EMG/NCV studies, and the treatment notes of Dr. Satinderpaul Satia and Dr. Morgan Callahan which are consistent with Dr. Humbarger's opinion. (Doc. 25 at 15-17.) But the ALJ did not have to refer to every piece of evidence in the record. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). And this argument does not address why the ALJ's decision is not supported by substantial evidence—it merely offers additional evidence in her favor. *See Sims*, 706 F. App'x at 604. Belanger is essentially asking the

8

Court to reweigh the evidence, which is not allowed. *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973) ("Resolution of conflicts in the evidence, including conflicting medical opinions and determinations of credibility are not for the courts; such functions are solely within the province of the Secretary.") At bottom, Belanger has failed to show any error with the ALJ's assessment of Dr. Humbarger.

### B. Evidence Supporting the RFC

Next, Belanger argues substantial evidence does not support the RFC. Specifically, she says the ALJ failed to address several items:

- her need for a sit/stand option while working,
- her migraine headaches,
- manipulation/handling limitations stemming from her arm and shoulder pain, and
- side effects from her medication.

(Doc. 25 at 18-21.) Her claims implicate both steps two and four of the sequential evaluation process described above. *See supra* footnote 2.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c). The Eleventh Circuit has described this analysis "as a screening or filter to eliminate groundless claims." *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014). Important for present purposes, an ALJ need not identify every severe impairment. *Id*. "The finding of any severe impairment, based on either

9

a single impairment or a combination of impairments, is enough to satisfy step two because once the ALJ proceeds beyond step two, he is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe." *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 902 (11th Cir. 2011).

At step four of the sequential evaluation process, the ALJ assesses a claimant's RFC and ability to do past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv). The RFC, defined as the most the claimant can still do despite her limitations, is based on an evaluation of all the relevant evidence in the record. *See id.* §§ 404.1520(e), 404.1545(a)(1) and (a)(3); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). The task of determining a claimant's RFC and ability to work rests with the ALJ, not a medical source. *See Moore v. Soc. Sec. Admin., Com'r*, 649 F. App'x 941, 945 (11th Cir. 2016).

The Court first considers the lack of a sit/stand option in Belanger's RFC. The ALJ did not provide a sit/stand option, but this was only error if substantial evidence does not support the omission. Dr. Humbarger's opinion seemed to indicate such an option would be required (if she could work at all). (Tr. 747.) But, as noted above, the ALJ reasonably found Dr. Humbarger's opinion unpersuasive (Tr. 22), and the RFC is for the ALJ to decide—not the doctor. Ultimately, substantial evidence supports the omission because the state medical consultants opined Belanger could work either sitting or

10

standing for six hours (Tr. 66, 80-81), she denied having balance problems (Tr. 21, 322, 645), she has full strength in her upper and lower extremities (Tr. 403, 408, 677, 707, 713, 729, 741, 776, 794), she usually has a normal gait (Tr. 21, 350, 354, 729), she does not use assistive devices (Tr. 741), and she can walk on her heels and toes (Tr. 777). Thus, a reasonable mind could conclude that a sit/stand option was not needed within the RFC.

Next, Belanger claims the ALJ erred by failing to determine whether her headaches are severe and by ignoring them in the RFC. As an initial matter, the ALJ was not required to decide on the severity of her headaches because he found at least one impairment severe. (Tr. 17); *Tuggerson-Brown*, 572 F. App'x at 951. And in building the RFC, the ALJ stated he considered all of Belanger's symptoms, specifically noting her headaches. (Tr. 20.) Further, although Belanger complained of headaches to her medical care providers, she does not allege they cause any functional limitations which could be accounted for in an RFC. Thus, there is no error here either.

Belanger's claim the RFC needed manipulative or handling limitations because of her arm and shoulder pain is similarly unpersuasive. The record shows Belanger had more than the 90 degrees of arm rotation (Tr. 402, 405-06) and full or nearly full grip and extremity strength (Tr. 21, 729, 776.) But even setting that aside, the ALJ noted that Belanger has arthritis in her hands

11

and weakness in her finger flexors. (Tr. 21.) So he reduced her RFC accordingly. (Tr. 21.)

Finally, Belanger declares the ALJ should have included mental limitations to account for the drowsiness caused by her medications. But the ALJ explained how he evaluated Belanger's medicinal side effects and why he did not account for them further in the RFC:

> Although the claimant alleges side effects from medication, the undersigned has considered the type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate pain or other symptoms. The medical record contains few, if any, complaints of side effects to a medical source and the undersigned concludes that any side effects are not so significant they justify a further reduction of the claimant's residual functional capacity. One would expect that if the claimant's side effects were truly significant, then she would have at least mentioned them more often. Moreover, the record shows the claimant's medical provider specifically noted the claimant's medications do not have side effects for her. (See Exhibit 14F at page 2).

(Tr. 22.) Although Belanger correctly notes that she reported side effects multiple times to Dr. Callahan who then adjusted the medications in response, it is noteworthy that Dr. Callahan remarked on her final visit: "The medications prescribed give the patient adequate pain relief without significant side effects." (Tr. 704.) Few complaints by the patient and little concern from the prescribing doctor is substantial evidence for an ALJ to not

consider medicinal side effects in the RFC. *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990).

One last thing on this argument. Belanger contends that because the ALJ did not consider the issues above, proper questions were not addressed to the vocational expert. (Doc. 25 at 19-21.) But because the ALJ did not err in forming the RFC and then putting it to the vocational expert, this point is moot.

### C. Rejection of Belanger's Subjective Complaints as Not Credible

Last, Belanger argues that substantive evidence does not support the ALJ's finding that her subjective complaints were not credible. (Doc. 25 at 21.) The Eleventh Circuit recently reiterated the standard used to evaluate this argument:

> A claimant may establish that [s]he has "a disability through [her] own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). In such a case, the claimant must show evidence of an underlying medical condition and either "objective medical evidence that confirms the severity of the alleged pain arising from that condition" or "that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Once a claimant has made this showing, the Commissioner "must then evaluate the intensity and persistence of [the claimant's] symptoms" in light of "all available evidence," including the claimant's testimony. 20 C.F.R. § 404.1529(c)(1). The Commissioner "will not reject" a claimant's statements "solely because the available objective medical evidence does not substantiate" the statements. *Id.* §

13

> 404.1529(c)(2). Instead, the ALJ considers several "[o]ther factors concerning [the claimant's] functional limitations and restrictions due to pain and other symptoms." *Id.* § 404.1529(c)(3)(i)-(vii).
>
> If a claimant provides subjective testimony on the severity of his symptoms, as [the claimant] did here, the ALJ "must articulate explicit and adequate reasons" for rejecting the complaints. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). The ALJ's "credibility determination does not need to cite particular phrases or formulations[,] but it cannot merely be a broad rejection" that fails to consider a claimant's "medical condition as a whole." *Dyer*, 395 F.3d at 1210-11 (cleaned up). We will not disturb "[a] clearly articulated credibility finding with substantial supporting evidence in the record." *Foote*, 67 F.3d at 1562.

*Taylor v. Comm'r of Soc. Sec.*, No. 21-12804, 2022 WL 1634086, at *5-6 (11th Cir. May 24, 2022).

Here, the ALJ reiterated this formula, followed it, and cited to substantial evidence to support his findings. (Tr. 20.) He noted Belanger has "medically determinable impairments [that] could reasonably be expected to cause some of the alleged symptoms." (Tr. 20.) Then, the ALJ considered "the medical evidence and other evidence in the record" to evaluate the "intensity, persistence, and limiting effects of these symptoms." (Tr. 20-21.) Ultimately, he concluded Belanger's statements about these symptoms conflict with the evidence. (Tr. 20-21.) Thus, the question is whether the ALJ's explanation for

14

this credibility finding is "clearly articulated . . . with substantial supporting evidence in the record." *Foote*, 67 F.3d at 1562.

The ALJ could not have been clearer:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent with the record. The complaints are not fully supported by the objective and longitudinal medical evidence. The severity of the claimant's subjective pain and functional limitations are out of proportion to the objective findings and recommended course of treatment.

(Tr. 21.) He then cited this evidence. For example, despite alleging that she needs to use a cane, Belanger reported that she has normal gait, has no balance problems, and does not need assistive devices. (Tr. 21, 322, 350, 354, 645, 729, 741.) She is currently being treated with medication for her pain which her provider most recently noted gives adequate relief with few or no side effects. (Tr. 22, 704.) Finally, the state medical consultants found Belanger over-endorsed her symptoms which they concluded were not severe. (Tr. 22, 65, 79.) Thus, objective medical evidence and Belanger's own statements provide substantial grounds for the ALJ's credibility finding. This is enough to affirm. *See Taylor*, 2022 WL 1634086, at *6.

## IV. Conclusion

Considering the record as a whole, substantial evidence supports the ALJ's findings. Accordingly, the Court **AFFIRMS** the Commissioner's decision

15

and directs the Clerk to enter judgment for the Commissioner and against Joanna Belanger and close the file.

**ENTERED** in Fort Myers, Florida this December 22, 2022.

Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record